IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOCAL 705 INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION FUND, and JOSEPH BAKES, STEPHEN F.G. BRIDGE, JUAN CAMPOS, GREGORY R. FOSTER, KENNETH J. EMANUELSON, WILLIAM W. GIANARAS, DAN THOMAS, and DUANE MATTINGLY, as Trustees | ) ) ) ) ) ) ) ) ) | |
| | ) | Case No. 17-C-2796 |
| Plaintiffs, | ) ) ) | District Judge Samuel Der-Yeghiayan |
| vs. | ) ) | Magistrate Judge Jeffrey Cole |
| ABF FREIGHT SYSTEM, INC., an Arkansas corporation, | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

Defendant ABF Freight System, Inc. ("ABF"), by and through its attorneys, hereby responds in opposition to Plaintiffs Joseph Bakes, Stephen F.G. Bridge, Juan Campos, Gregory R. Foster, Kenneth J. Emanuelson, William G. Gianaras, Dan Thomas, Duane Mattingly, and Local 705 International Brotherhood of Teamsters Pension Fund's (collectively, "Plaintiffs" or the "Fund") Motion for Protective Order (Dkt. 21) ("Motion"). In support, ABF states as follows:

**I.    INTRODUCTION**

In this case, Plaintiffs are seeking what they believe to be unpaid pension contributions. Plaintiffs claim that, pursuant to a 2008 agreement, ABF should be remitting a full week of pension credit on behalf of any employee who works at least one day in that week (the "one

punch" rule). ABF believes that, pursuant to an agreement made during collective bargaining negotiations in 2013, employees should get pension credit for each day worked ("daily punch").

In November 2017, ABF subpoenaed Greg Alden and Harvey Ritter ("Alden and Ritter"), agents of the International Brotherhood of Teamsters Union (the "IBT"), affiliated Teamster Local Unions, and/or the Teamsters National Freight Industry Negotiating Committee ("TNFINC"), for depositions. (Dkt. 21). Plaintiffs have now moved to prevent these depositions. Alden and Ritter have personal knowledge regarding the collectively bargained agreements that control ABF's obligation to contribute to the Fund. Plaintiffs do not quibble that Alden and Ritter have such personal knowledge; rather, they say such knowledge is irrelevant because the agreements are unambiguous and controlling. They are wrong.

Plaintiffs' entire argument rests on their incorrect assertion that "Defendant's obligations to the Fund can and must be determined solely based on the applicable written agreements," which they claim are "clear" and "straightforward." (Dkt. 21 ¶¶ 15, 24). But even a cursory glance shows the agreements in question – which arise from a long and very complicated bargaining history involving ABF, TNFINC, and Local 705 of the International Brotherhood of Teamsters ("Local 705") – are anything but "clear" and "straightforward"; indeed, they are directly contradictory.

Moreover, one of the "agreements" upon which Plaintiffs rely (Plaintiffs' Exhibit E) is not an agreement between ABF and Local 705 at all; Exhibit E is a document the parties explicitly agreed to abandon, with certain exceptions, in 2009 when the Local 705 bargaining unit at issue was merged into a nationwide bargaining unit and brought under a nationwide master agreement. Because the agreements in question are contradictory as to ABF's obligation to the Fund, ABF is entitled to take depositions of individuals who can shed light on the meaning

of such agreements. Plaintiffs' Motion should be denied, and ABF should be permitted to depose Alden and Ritter to clarify the meaning of the relevant agreements' ambiguous and inconsistent terms.

## II. FACTUAL BACKGROUND

ABF, Local 705, and TNIFNC have a long, complicated bargaining history.[1] Prior to 2009, ABF and TNFINC – which bargains on behalf of the International Brotherhood of Teamsters and its affiliated local unions in the freight industry – were parties to the National Master Freight Agreement (the "NMFA") (Plaintiffs' Exhibit C) and applicable area supplemental agreements. The NMFA and its supplements covered driving and dock work in ABF's operations on a nationwide basis, except in and around the Chicago area. In Chicago, Local 705 (and other Chicago-based local Teamster unions) represented a standalone bargaining unit of ABF employees and negotiated a separate "white paper" contract with ABF (Plaintiffs' Exhibit E).[2]

In 2009, TNFINC merged Local 705 (and the other Chicago locals) into the nationwide bargaining unit covered by the NMFA and the Central States Area Supplemental Agreement (the "Central States Supplement") (Plaintiffs' Exhibit D). (*See* Plaintiffs' Exhibit H). Pursuant to a Memorandum of Understanding between TNFINC and the multi-employer association representing ABF in bargaining at the time (Plaintiffs' Exhibit F), however, the Chicago locals, including Local 705, were permitted to maintain "superior" terms in the white paper agreements

---

[1] Plaintiffs are not parties to any of the collectively bargained agreements between ABF, TNFINC, and Local 705, and had no role in negotiating these agreements, but are instead mere beneficiaries.

[2] Plaintiffs refer to these agreements as both "white paper" agreements and "white sheet" agreements. It is ABF's understanding that Plaintiffs are referring to the same agreements. (*See e.g.,* Dkt. 21 ¶¶ 15, 21).

3

(*Id.*). Nowhere in the Memo of Understanding, nor in any negotiated contract, are "superior" terms defined.

In 2013, ABF and TNFINC engaged in negotiations for a successor to the NMFA and its supplements, which originally were scheduled to expire on March 31, 2013. These negotiations were the first that followed the 2009 elimination of the separate Chicago bargaining units in the unionized freight industry and involved TNFINC negotiating on behalf of Local 705 and numerous other Teamster Local Unions. During these negotiations, TNFINC bargaining committee representatives and ABF agreed that on a going-forward basis, pension contributions would be calculated based on a "daily punch" rather than on the "one punch" basis that had been in place under the now-defunct Local 705 white paper agreement. Specifically, the bargaining parties agreed that the daily punch contribution method outlined in the Central States Supplement, Plaintiffs' Exhibit D, Article 55 ("Employer contributed . . . [$68.40] per day or tour of duty either worked or compensated") would apply going forward.

The bargaining parties also agreed that ABF would continue to honor "superior" terms from the "white paper" agreement. That same agreement goes on to state, however, that "the local rules or terms do not override the national general wage adjustments, national vacation reduction or other specific nationally applicable contractual terms." (Plaintiffs' Exhibit E).

The instant dispute boils down to this – Plaintiffs claim that the "one punch" pension contribution rule that is reflected in the 2008 "white paper" agreement is still operational, despite that agreement being abandoned by the parties, because Plaintiffs believe "one punch" is a "superior" term that was not overridden by the "other specific nationally applicable contractual terms" that were negotiated in 2013. ABF asserts that the "daily punch" rule that was agreed to on a national basis in bargaining between it and TNFINC in 2013 and that is reflected in the

4

2013 Central States Supplement that applies to ABF's Chicago-area operations – including those operations staffed by employees who are represented by Local 705 and participants in the Fund – is the correct contribution requirement.

### III. ARGUMENT

#### A. Rule 26 Allows For Broad Discovery Relevant To Parties' Claims Or Defenses.

Rule 26(b)(1) provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Pursuant to Rule 26, "information within the scope of discovery does not need to be admissible at trial." *Id.*; *see e.g., Simon v. Northwestern Univ.*, 2017 WL 467677, at *2 (N.D. Ill. Feb. 3, 2017). Moreover, a party has a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary. Fed. R. Civ. P. 30(a); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002).

The party seeking a protective order must show specific facts showing good cause to justify the protective order. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015). A protective order should only issue in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense." Fed. R. Civ. P. 26(c)(1). Moreover, the party seeking a protective order carries a heightened burden when a deposition is at issue. Indeed, courts in this district have held that "it is rare to preclude a deposition altogether . . . " *Steadfast Ins. Co., Inc. v. Auto Mktg. Network, Inc.*, 97 C 5696, 1999 WL 300231, at *1 (N.D. Ill. May 3, 1999) (internal citations omitted).

Plaintiffs' claim for unpaid benefits is premised on ERISA. Section 515 of ERISA provides in relevant part:

5

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This section entitles pension funds "to enforce the terms of agreements when those terms are *unambiguous*." *Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 911 (7th Cir. 2000) (emphasis added); *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (*en banc*). However, where an agreement contains ambiguous or contradictory terms, the court can – and indeed must – look to extrinsic evidence. *See e.g., Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998). That extrinsic evidence includes information which illuminates the parties' understanding regarding ABF's contribution obligations to the Fund. Alden and Ritter will provide such evidence.

    **B. The Depositions of Alden and Ritter Are Necessary Because the Agreements at Issue Are Ambiguous.**

  Plaintiffs' entire basis for the protective order relies on the theory laid out in *Gerber Truck*, that a union pension fund is free to rely on the explicit terms of a collectively bargained agreement, 870 F.3d at 1149. That is true as far as it goes, but *Gerber Truck* is only applicable where the agreement is *unambiguous*. Plaintiffs claim the agreements at issue are "clear" and "straightforward," so *Gerber Truck* must apply. (Dkt. 21 ¶ 15, 24). Plaintiffs simply are incorrect in this assertion.

  The collective bargaining agreement at issue here is comprised of multiple documents, all of which must be viewed together along with a complex history of negotiations and past practice. Only then are the terms and conditions of employment for applicable employees, including the Company's obligation to make pension benefit contributions on their behalf to the Fund, discernable. There is the NMFA, the Central States Supplement to the NMFA, the expired and defunct 2008 Chicago "white paper" contract, and numerous written side agreements. Two of

6

those agreements – the Central States Supplement and the 2008 "white paper" contract – directly contradict each other, with one providing for "one punch" and one providing for "daily punch." This is not a case like *Gerber Truck* where an employer alleges an oral agreement with a union that is different from the written terms of the CBA. The "daily punch" contribution method that applies here clearly is set forth in the Central States Supplement. Thus, *Gerber Truck* does not apply here. *See Moriarty*, 164 F.3d at 332 (7th Cir. 1998) ("Therefore, unlike *Gerber*, this is not a case where the pension plan's expectations are being frustrated by secret side agreements negating previously negotiated CBAs. The extrinsic evidence of the parties' understanding of [a contractual term] is highly relevant, and in this case, the district court must consider it").

Absent *Gerber Truck*, Plaintiffs have no basis to prevent the depositions of Alden and Ritter. Nor should they. The dispute in this case undeniably turns on what happened during the 2013 negotiations between ABF and TNFINC. The documents alone do not answer the question. Alden and Ritter were part of those 2013 negotiations, and thus their testimony is necessary to determine the bargaining parties' true intent and ultimate agreement on the issue of pension contributions.

### C. Plaintiffs Have Not Demonstrated Good Cause.

In order to obtain a protective order, Plaintiffs must demonstrate "good cause." Fed. R. Civ. P. 26(c)(1); *Bianchi v. Tonigan*, 2012 WL 5966543, at *3 (N.D. Ill. Nov. 28, 2012) ("To successfully carry the burden of establishing good cause, a party must demonstrate a particular need for protection. There must be evidence that a clearly defined and serious injury will result otherwise."). Plaintiffs have not met this burden. Aside from Plaintiffs' misguided reliance on *Gerber Truck*, discussed above, Plaintiffs also assert that the "time and expense associated with deposing non-party witnesses, out of state, is disproportionate and unwarranted." (Dkt. 21 ¶ 14). First, such an assertion is insufficient to satisfy Plaintiffs' burden to demonstrate good cause.

*Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 766 (N.D. Ill. 2010) ("As a crucial part of the good cause basis for a protective order, the moving party must make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."). Second, because "it is rare to preclude a deposition altogether," *Steadfast Ins. Co., Inc. v. Auto Mktg. Network, Inc.*, 1999 WL 300231, at *1 (N.D. Ill. May 3, 1999), Plaintiffs' attempt to preclude Alden and Ritter's depositions in their entirety should fail. *Id.*

Here, Plaintiffs' arguments fail to demonstrate with specificity why the depositions would take a "disproportionate" amount of time or why they are "unwarranted." (Dkt. 21 ¶ 14). According to Plaintiffs, the amount of contributions claimed is "approximately $150,000." (*Id.*). This is a significant sum of money, and surely warrants a short trip to a neighboring state.[3] Regardless, even if Plaintiffs' arguments regarding undue expense are properly asserted, an argument based solely on time and expense is insufficient to warrant the issuance of a protective order. *Steadfast*, 1999 WL 300231, at *2 ("The mere fact that an objecting party will be required to expend a considerable amount of time, effort, or expense in providing discovery is not a sufficient reason to preclude discovery.").

Finally, other than the conclusory statement that Alden and Ritter's depositions would be "disproportionate," Plaintiffs put forth no evidence supporting their argument. *Cf. Halvorsen v. Credit Adjustments Inc.*, 2016 WL 1446219, at *2 (N.D. Ill. Apr. 11, 2016) (the moving party in a motion to compel must "adequately demonstrate the nature and extent of the claimed burden by making a specific showing" and this showing "typically requires affidavits or other evidence supporting a party's assertions of burden."); *Steadfast*, 1999 WL 300231 at *2 (denying motion for protective order regarding a deposition where moving party offers no affidavit in support).

---

[3] Plaintiffs need not even attend the deposition at all or in person – they can get a transcript or attend by phone.

Nor do Plaintiffs attempt to argue that Alden and Ritter lack personal knowledge of the negotiations that led to the underlying agreements. (*See e.g.,* Dkt. 21 ¶¶ 3, 8). Thus, Plaintiffs have failed to show good cause to prevent ABF's from conducting discovery that is highly relevant to their asserted defenses.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for protective order should be denied and ABF should be permitted to conduct Alden and Ritter's depositions.

Dated: January 26, 2018　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　By: /s/ *Ross H. Friedman*

　　　　　　　　　　　　　　　　　　　　Ross H. Friedman
　　　　　　　　　　　　　　　　　　　　Meredith E. Riccio
　　　　　　　　　　　　　　　　　　　　MORGAN, LEWIS & BOCKIUS LLP
　　　　　　　　　　　　　　　　　　　　77 West Wacker Drive, 5th Floor
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60601
　　　　　　　　　　　　　　　　　　　　312.324.1000 (phone)
　　　　　　　　　　　　　　　　　　　　312.324.1001 (fax)
　　　　　　　　　　　　　　　　　　　　ross.friedman@morganlewis.com
　　　　　　　　　　　　　　　　　　　　meredith.riccio@morganlewis.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant ABF Freight System, Inc.*

**CERTIFICATE OF SERVICE**

I, Ross H. Friedman, an attorney, hereby certify that on January 26, 2018, I filed the foregoing **Defendant's Memorandum in Opposition to Plaintiffs' Motion for Protective Order** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to:

Stephen J. Rosenblatt
Patrick N. Ryan
Baum Sigman Auerbach & Neuman, Ltd.
200 W. Adams Street
Suite 2200
Chicago, IL 60606-2559
(312) 216-2559
(312) 216-2573
srosenblat@baumsigman.com
pryan@baumsigman.com

*/s/ Ross H. Friedman*
Ross H. Friedman